UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES WEAVER GAREY and WILLIAM
PARKER GAREY and AARON CRUTHIS, on
behalf of themselves and others similarly
situated,

                  *Plaintiffs,*

             v.

JAMES S. FARRIN, P.C. d/b/a LAW OFFICES
OF JAMES SCOTT FARRIN,  MARCARI,
RUSSOTTO, SPENCER & BALABAN, P.C.,
RIDDLE & BRANTLEY, L.L.P., WALLACE
PIERCE LAW, PLLC, R. BRADLEY VAN
LANINGHAM d/b/a/ BRADLEY LAW GROUP
and LANIER LAW GROUP, P.A.

                 *Defendants.*

Action No.: _____

**COMPLAINT
(CLASS ACTION
JURY TRIAL DEMANDED)**

_____

      NOW COME Plaintiffs, complaining of Defendants, and allege and say as

follows:

1

## SUMMARY OF THE ACTION

**The Defendant law firms violated the federal Driver's Privacy Protection Act of 1994 which Congress enacted to protect people and their personal information.**

State DMVs require people who apply for drivers' licenses and vehicle registrations to disclose personal information, including their name and residential address. *See Maracich v. Spears*, 133 S. Ct. 2191, 2206 (2013). For many years, this personal information was widely available from the DMVs with little restriction. *See id.* at 2198. The unrestricted disclosure of state DMV information led to two big problems: (1) stalkers and criminals could get the information; and, (2) states commonly sold the personal information to marketers. *Id.* Congress addressed these two concerns by enacting the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. § 2721 *et seq.*, which bans unwanted disclosure and use of personal information, including names and residential addresses.

Defendants in this case are a lawyer and several law firms that have systematically violated the DPPA by knowingly obtaining protected personal information from motor vehicle records in North Carolina and then using that protected information for hundreds, or possibly thousands, of people in an effort to sell their legal services. This systematic abuse has continued even after the United States Supreme Court held, in 2013, that attorney solicitation is an improper use of DMV information. *See Maracich, supra* at 2209.

Plaintiffs in this case are individuals whose protected personal information was improperly obtained and used by one or more of the Defendants in violation of the DPPA when Defendants obtained protected DMV information from accident reports and then used that information to send marketing letters. Plaintiffs file this case for themselves, and for others whose privacy was violated, to do two things: (1) ask the Court for an injunction to stop Defendants from further abuse of personal DMV information; and, (2) to ask the Court to award damages as provided by Congress.

## PARTIES

1.     Plaintiff James Weaver Garey is a citizen and resident of Wake County, North Carolina.

2.     Plaintiff William Parker Garey is a citizen and resident of Wake County, North Carolina.

3.     Plaintiff Aaron Cruthis is a citizen and resident of Alamance County, North Carolina.

4.     Defendant James S. Farrin, P.C. ("Farrin Firm") is a law firm organized as a professional corporation under the laws of the State of North Carolina. Defendant Farrin's registered agent for service of process is James S. Farrin, and said agent's address is 280 South Mangum Street, Durham, North Carolina 27701. Defendant Farrin Firm does business and markets its services under the name "Law Offices of James Scott Farrin." Defendant Farrin Firm has its principal place of business and regularly does business in the Middle District of North Carolina.

5.     Defendant Marcari, Russotto, Spencer & Balaban, P.C. ("Marcari Russotto") is a law firm organized as a professional corporation under the laws of the State of North Carolina. Defendant Marcari Russotto's registered agent is David W. Spencer, and said agent's address is 6801 Pleasant Pines Drive, Suite 100, Raleigh, North Carolina 27613. Defendant Marcari Russotto regularly markets its services and does business in the Middle District of North Carolina.

6.     Defendant Riddle & Brantley, L.L.P., ("Riddle & Brantley") is a law firm organized as a limited liability partnership under the laws of the State of North Carolina.

3

Defendant Riddle & Brantley's registered agent is Gene A. Riddle, and said agent's address is 601 North Spence Avenue, Goldsboro, North Carolina 27534-4263. Defendant Riddle & Brantley regularly markets its services and does business in the Middle District of North Carolina.

7.     Defendant Wallace Pierce Law, PLLC ("Wallace Pierce") is a law firm organized as a professional corporation under the laws of the State of North Carolina. Defendant Wallace Pierce's registered agent for service of process is Jared W. Pierce, and said agent's address is 2304 S. Miami Blvd., Suite 123, Durham, North Carolina 27703. Defendant Wallace Pierce has its principal place of business and regularly does business in the Middle District of North Carolina.

8.     Defendant R. Bradley Van Laningham is an attorney who practices law within the Middle District of North Carolina. Defendant Van Laningham does business as "Bradley Law Group". Defendant Van Laningham's address is 1000 Revolution Mill Drive, Studio 4, Greensboro, North Carolina 27405. Defendant regularly does business and markets his services in the Middle District of North Carolina.

9.     Defendant Lanier Law Group, P.A., is a law firm organized as a corporation under the laws of the State of North Carolina. Defendant Lanier Law Group's registered agent for service of process is Lisa Lanier, and said agent's address is 600 South Duke Street, Durham, North Carolina 27701. Defendant Lanier Law Group regularly does business and has its principal place of business in the Middle District of North Carolina.

4

## JURISDICTION AND VENUE

10.     This action arises under, and is brought pursuant to the DPPA. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 as the actions arise under the laws of the United States.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as one or more Defendants do business in the District and therefore are deemed residents of this district for purposes of venue. 28 U.S.C. §§ 1391(b) and (c).

## FACTS

### The DMV-349 Accident Report

12.     Law enforcement agencies in North Carolina are obligated to investigate crashes which are reported to them, such as those described below.

13.     In conducting crash investigations, law enforcement officers in North Carolina must use a DMV-349 to record their investigations of reportable crashes, as defined by N.C. Gen. Stat. § 20-4.01(33b).

14.     When law enforcement officers complete the DMV-349 in connection with a crash investigation, they are obligated to comply with the then-current edition of the Instruction Manual for the DMV-349 ("the Manual").

15.     At the time of the collisions described below, the Manual instructed officers to:

    a.     record the names of drivers involved in a collision as follows: "Enter the driver's name exactly as it appears on his/her driver's license";

5

b. compare the address given by a driver to the address on that driver's license and indicate on the DMV-349 whether those addresses match; and

c. record each involved driver's license number on the DMV-349.

16. At the time of the collisions described below, the Manual instructed officers to review the registration information for each vehicle involved in the wreck and to record the name and address of the registered owner of each involved vehicle on the DMV-349.

**Facts related to William Garey and James Garey**

17. On 4 May 2016, Plaintiff William Parker Garey was driving a pickup truck and was involved in a motor vehicle accident ("the Garey Accident"). The Garey Accident was a reportable crash as defined by N.C. Gen. Stat. § 20-4.01.

18. The City of Raleigh Police Department was notified of the accident and sent Officer D.W. Sigrist to investigate the accident.

19. At the scene of the Garey Accident and at Officer Sigrist's request, Plaintiff William Garey presented his driver's license to Officer Sigrist. Officer Sigrist transcribed certain information, including Plaintiff William Garey's name, address, date of birth, telephone number and driver's license number into a standard North Carolina Division of Motor Vehicles Crash Report known as a DMV-349. The source of Plaintiff's address, date of birth, telephone number and driver's license number was the North Carolina Division of Motor Vehicles ("NCDMV")

6

20.     At the scene of the Garey Accident, Officer Sigrist asked Plaintiff William Garey if the information shown on his driver's license was correct, and Plaintiff William Garey informed Officer Sigrist that the information on his driver's license was correct. As a result of this interaction, Officer Sigrist checked a box on the DMV-349 to indicate that Plaintiff William Garey's actual address matched the address on his driver's license.

21.     At the scene of the Garey Accident, Officer Sigrist transcribed on the DMV-349 certain information regarding the registration of the vehicle that Plaintiff William Garey was operating at the time of the Garey Accident. This information related to the registration of said vehicle and included Plaintiff James Weaver Garey's name and address and the license plate year and number of said vehicle. The source of this information was the North Carolina Division of Motor Vehicles ("NCDMV").

22.     Officer Sigrist filed the DMV-349 for the Garey Accident with his department, which filed it with the NCDMV.

23.     Within a few days of the Garey Accident, Defendants Farrin Firm, Marcari Russotto, Riddle & Brantley, Wallace Pierce and Van Laningham obtained a copy of the DMV-349 for the Garey Accident. Said report contained Plaintiff William Garey's name and address, as well as the fact that the address on the DMV-349 matched the address on Plaintiff William Garey's driver's license. Said report also contained the name and address of the other driver involved in the Garey Accident. Said report also contained the name and address of Plaintiff James Garey, along with the name and address of the registered owner of the other vehicle involved in the Garey Accident.

7

24.     Each of Defendants Farrin Firm, Marcari Russotto, Riddle & Brantley, Wallace Pierce and Van Laningham obtained the DMV-349 for the Garey Accident for the purpose of marketing that Defendant's legal services.

25.     Defendants Farrin Firm, Marcari Russotto, Riddle & Brantley, Wallace Pierce and Van Laningham knew that the DMV-349 form for the Garey Accident that they obtained and used contained personal information from a motor vehicle record because, among other things:

a.      The DMV-349 indicated that Plaintiff's William Garey's address on the DMV-349 matched the address on his driver's license. That fact could only have come from a review of Plaintiff William Garey's driver's license;

b.      The DMV-349 had a blank for Plaintiff William Garey's driver's license number, the contents of which blank were marked "REDACTED". Plaintiff William Garey's driver's license number originated with, and could only have come from, NCDMV;

c.      Plaintiff William Garey's driver's license restrictions were recorded as "0" on the DMV-349. Those driver's license restrictions could only have originated as a record of the NCDMV and could only have come from NCDMV; and

d.      Defendants knew that officers routinely record the name and address of vehicle owners from the vehicle registration card or from the computerized records from NCDMV.

8

26.     Defendants Farrin Firm, Marcari Russotto, Riddle & Brantley, Wallace Pierce, and Van Laningham used the protected personal information of Plaintiffs William Garey and James Garey, including their names and addresses, by addressing marketing materials to the address of Plaintiff William Garey and mailing said materials. Defendants Farrin Firm, Marcari Russotto, Riddle & Brantley, and Wallace Pierce included a copy of the DMV-349 for the Garey Accident in their respective mailing. Defendant Van Laningham stated in the mailing that his firm had obtained the DMV-349 for the Garey Accident.

27.     A true and accurate copy, save for redactions (shown in red) to prevent the unnecessary disclosure of the personal information of non-parties, of the mailing addressed to Plaintiff William Garey's home by Defendant Farrin Firm is attached hereto as Exhibit 1.

28.     A true and accurate copy, save for redactions (shown in red) to prevent the unnecessary disclosure of the personal information of non-parties, of the mailing addressed to Plaintiff William Garey's home by Defendant Marcari Russotto is attached hereto as Exhibit 2.

29.     A true and accurate copy, save for redactions (shown in red) to prevent the unnecessary disclosure of the personal information of non-parties, of the mailing addressed to Plaintiff William Garey's home by Defendant Riddle & Brantley is attached hereto as Exhibit 3.

30.     A true and accurate copy, save for redactions (shown in red) to prevent the unnecessary disclosure of the personal information of non-parties, of the mailing

9

addressed to Plaintiff William Garey's home by Defendant Wallace Pierce is attached hereto as Exhibit 4.

31.     A true and accurate copy of the mailing addressed to Plaintiff William Garey's home by Defendant Van Laningham is attached hereto as Exhibit 5.

**Facts related to Aaron Cruthis**

32.     On 30 April 2016, Plaintiff Aaron Cruthis was involved in a motor vehicle accident ("the Cruthis Accident"). This Accident was a reportable crash as defined by N.C. Gen. Stat. § 20-4.01.

33.     The City of Greensboro Police Department was notified of the accident and sent Officer E.H. Rasecke to investigate the Accident.

34.     At the scene of the Cruthis Accident and at Officer Rasecke's request, Plaintiff Cruthis presented his driver's license to Officer Rasecke. Officer Rasecke transcribed certain information, including Plaintiff Cruthis's name, address, date of birth, telephone number and driver's license number into a standard North Carolina Division of Motor Vehicles Crash Report known as a DMV-349.

35.     At the scene of the Cruthis Accident, Officer Rasecke asked Plaintiff Cruthis if the information shown on his driver's license was correct, and Plaintiff Cruthis informed Officer Rasecke that the information on his driver's license was correct. As a result of this interaction, Officer Rasecke checked a box on the DMV-349 to indicate that Plaintiff Cruthis's actual address matched the address on his driver's license.

36.     At the scene of the Cruthis Accident, Officer Rasecke transcribed onto the DMV-349 certain information regarding the registration of the vehicle that Plaintiff

10

Cruthis was operating at the time of the Cruthis Accident. This information related to the registration of said vehicle and also included Plaintiff Cruthis's name and address and the license plate year and number of said vehicle. The source of this information was the North Carolina Division of Motor Vehicles ("NCDMV").

37.     Officer Rasecke filed the DMV-349 for the Cruthis Accident with his department, which filed it with the NCDMV.

38.     Within a few days of the Cruthis Accident, Defendant Lanier Law Group obtained a copy of the DMV-349 for the Cruthis Accident. Said report contained Plaintiff Cruthis's name and address, as well as the fact that the address on the report matched the address on Plaintiff Cruthis's driver's license. Said report also contained the name and address of the other driver involved in the Cruthis Accident. Said report also contained the name and address of the registered owner of the other vehicle involved in the Cruthis Accident.

39.     Defendant Lanier Law Group obtained the DMV-349 for the Cruthis Accident for the purpose of marketing Defendant Lanier Law Group's legal services.

40.     Driver's licenses and vehicle registration cards and records are motor vehicle records as defined by 18 U.S.C. § 2725(1)

41.     Defendant Lanier Law Group knew that the DMV-349 form for the Cruthis Accident that it obtained and used contained personal information from a motor vehicle record because, among other things:

    a.     The DMV-349 indicated that Plaintiff's Cruthis's address on the DMV-349 matched the address on his driver's license. That fact

11

could only have come from a review of Plaintiff Cruthis's driver's

license;

b.   The DMV-349 had a blank for Plaintiff Cruthis's driver's license

number, the contents of which blank were marked "REDACTED".

Plaintiff Cruthis's driver's license number originated with, and could

only have come from, NCDMV;

c.   Plaintiff Cruthis' driver's license restrictions were recorded as "0"

on the DMV-349. Those driver's license restrictions could only have

originated as a record of the NCDMV and could only have come

from the NCDMV; and

d.   Defendant Lanier Law Group knew that officers routinely record the

name and address of vehicle owners from the vehicle registration

card or from the computerized records from the North Carolina

Division of Motor Vehicles.

42.   Defendant Lanier Law Group used the protected personal information of

Plaintiff Cruthis, including his name and address, by addressing marketing materials to

the address of Plaintiff Cruthis and mailing said materials. Defendant Lanier Law Group

included a copy of the DMV-349 for the Cruthis Accident in its mailing.

43.   A true and accurate copy, save for redactions (shown in red) to prevent the

unnecessary disclosure of the personal information of non-parties, of the mailing

addressed to Plaintiff Cruthis's home by Defendant Lanier Law Group is attached hereto

as Exhibit 6.

12

**Facts related to all Defendants**

44.     Each of Defendants' mailings described above and attached as Exhibits 1-6 contained the words, "This is an advertisement for legal services" on the outside of the envelope and on the enclosed materials.

45.     Driver's licenses and vehicle registration cards and records are motor vehicle records as defined by 18 U.S.C. § 2725(1).

46.     Names and addresses on driver's licenses and vehicle registration cards and records constitute personal information that is protected by the DPPA.

47.     Defendants regularly obtain DMV-349 on motor vehicle accidents in bulk for the purpose of marketing their legal services.

48.     Upon information and belief, Defendants review information from DMV-349 forms that are obtained in bulk in order to determine who is at fault for each accident. Defendants only send marketing materials to those persons who do not appear to be at fault.

49.     The mailings described above sent by Defendants are form mailings. The mailing sent by each Defendant to a Plaintiff is identical in all material respects to the mailings that each Defendant regularly sends to persons whose information has been obtained from DMV-349 forms.

50.     Upon information and belief, Defendants send materials marked "This is an advertisement for legal services" only to persons whose names and addresses have been gleaned from DMV-349 forms.

13

51.     Plaintiffs did not consent to allow any Defendant to obtain or use their personal information from a motor vehicle record.

52.     Defendants regularly and knowingly use protected personal information from motor vehicle records to market their services to accident victims in the same manner that Defendants used the protected personal information of Plaintiffs.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action on behalf of a class defined as follows:

    a.     All natural persons

    b.     residing in North Carolina

    c.      identified on a DMV-349 as either

        i.     a driver whose address is designated on the DMV-349 as matching the address on that person's driver's license or

        ii.     a registered owner of a vehicle registered with the North Carolina Division of Motor Vehicles

    d.     to whom a Defendant named in this action sent a mailing with the words "This is an advertisement for legal services" printed on the outside of the envelope

    e.     within the 4 years preceding the filing of this action through conclusion of this action.

54.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants have knowingly obtained and used the protected personal information of hundreds, if not

14

thousands of individuals meeting the above class definition from DMV-349 reports for marketing purposes. Upon information and belief, many of those persons' names and addresses are identifiable through documents maintained by Defendants.

55.     **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include:

        a.     Whether Defendants knowingly obtained protected personal information from a motor vehicle record;

        b.     Whether Defendants' primary purpose in obtaining protected personal information was the marketing of legal services; and

        c.     Whether Defendants violated section 2722(a) of the DPPA by obtaining or disclosing personal information from a motor vehicle record without a permissible purpose under section 2721(b) of the DPPA;

56.     **Typicality** (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs have the same claims for liquidated damages that they seek for absent class members.

57.     **Adequacy** (Fed. R. Civ. P. 23(a)(4)): Plaintiffs are adequate representatives of the Class. Their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in complex litigation, and they intend to prosecute this action

15

vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

58. **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The liquidated damages sought by each member are the same. However, each class member's liquidated damages are limited, such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts to require class members to file thousands of individual lawsuits. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

<u>**FIRST CLAIM FOR RELIEF:**</u>
<u>**VIOLATION OF**</u>
<u>**THE DRIVER'S PRIVACY PROTECTION ACT**</u>
<u>**(18 U.S.C. § 2721 *ET SEQ.*)**</u>

59. The allegations contained in the paragraphs 1 through 58, supra, are incorporated herein by reference.

16

60.     Defendants knowingly obtained and used one or more Plaintiff's protected personal information from a motor vehicle record as described above.

61.     Each Defendant knowingly obtained and used one or more Plaintiff's protected personal information from a motor vehicle record for the purpose of marketing that Defendant's legal services.

62.     When each Defendant knowingly obtained and used one or more Plaintiff's protected personal information, said Defendant lacked Plaintiffs' express consent as required by the DPPA.

63.     When each Defendant sent its above-described mailing containing the words "This is an advertisement for legal services" to one or more Plaintiffs, Defendants knowingly used said Plaintiff's personal information from a motor vehicle record.

64.     Defendants knowingly both obtained and used Plaintiffs' personal information from a motor vehicle record for the purpose of marketing legal services.

65.     Advertising for legal services for the solicitations of new potential clients is not a permissible purpose for obtaining motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

66.     Defendants knowingly both obtained and used Plaintiffs' personal information from a motor vehicle record in violation of the DPPA.

67.     Because Defendants regularly and knowingly obtain and use personal information from motor vehicle records for purposes of marketing their services, violations of the DPPA are likely to continue.

17

68.     Under 18 U.S.C. § 2724(b)(4), the Court should enter a permanent injunction prohibiting Defendants from obtaining or using personal information from motor vehicle records for marketing purposes. Specifically, the Court should enjoin Defendants from:

        a.     Obtaining names and addresses sourced from DMV-349s for purposes of marketing legal services;

        b.     Sending mailings marketing legal services to drivers whose names and/or addresses are obtained by Defendants by means of DMV-349s; and

        c.     Sending letters containing a copy of a completed DMV-349 for the purpose of marketing legal services.

69.     Because Defendant obtained and used Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the DPPA, each Plaintiff is entitled to liquidated damages of $2,500.00 for each letter in which his personal information was contained.

18

WHEREFORE, Plaintiffs pray the Court for the following relief:

1.    To enter an Order certifying the proposed Class under Rule 23 and appointing Plaintiffs and the undersigned counsel of record to represent the Class;

2.    To permanently enjoin each Defendant, pursuant to 18 U.S.C. §2724(b)(4), from:

    a.    Obtaining names and addresses sourced from DMV-349s for purposes of marketing legal services;

    b.    Sending letters marketing legal services to drivers whose names and/or addresses are obtained by Defendants by means of DMV-349s; and

    c.    Sending letters containing a copy of a completed DMV-349 for the purpose of marketing legal services.

3.    To award liquidated damages, pursuant to 18 U.S.C. §2724(b)(1), to each Plaintiff in the amount of $2,500.00 for instance in which a Defendant knowingly obtained or used that Plaintiff's protected personal information;

4.    To award reasonable attorneys' fees and other litigation costs reasonably incurred, pursuant to 18 U.S.C. §2724(b)(3);

5.    To award pre- and post-judgment interest as allowed by law;

6.    For a trial by jury on all issues so triable; and

7.    For such other and further relief as the Court deems just and proper.

[SIGNATURE ON NEXT PAGE]

19

Respectfully submitted, this the 27th day of May 2016.

/s/ J. David Stradley
N.C. State Bar No. 22340
Attorney for Plaintiffs
**WHITE & STRADLEY, PLLC**
3105 Charles B. Root Wynd
Raleigh, North Carolina  27612
Telephone: (919) 844-0400
E-mail: stradley@whiteandstradley.com

/s/ Robert P. Holmes
N.C. State Bar No. 12438
Attorney for Plaintiffs
**WHITE & STRADLEY, PLLC**
3105 Charles B. Root Wynd
Raleigh, North Carolina  27612
Telephone: (919) 844-0400
E-mail: rob@whiteandstradley.com

20