## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM PARKER GAREY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:16cv542 |
| | ) | |
| JAMES S. FARRIN, P.C., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Plaintiffs' Motion to Compel Financial Discovery from Fox Defendants" (Docket Entry 238) (the "Plaintiffs' Motion"),[1] as well as "Plaintiffs' Motion to File Documents Partially Under Seal" (Docket Entry 240) (the "First Sealing Motion"), and "Plaintiffs' Motion to File Documents Partially Under Seal" (Docket Entry 246) (the "Second Sealing Motion"). For the reasons that follow, the Court will deny Plaintiffs' Motion and grant in part and deny in part the First Sealing Motion and the Second Sealing Motion (collectively, the "Sealing Motions").

---

1   For purposes of the pending motions, "James S. Farrin, P.C., d/b/a Law Offices of James Scott Farrin; James S. Farrin; Marcari, Russotto, Spencer & Balaban, P.C.[;] Donald W. Marcari; Riddle & Brantley, L.L.P.; Wallace Pierce Law, PLLC; Jared Pierce; Van Laningham & Associates, PLLC d/b/a Bradley Law Group; R. Bradley Van Laningham; Lanier Law Group, P.A.; Lisa Lanier; Crumley Roberts, LLP; Chris Roberts; Hardee & Hardee, LLP; Charles Hardee; and G. Wayne Hardee" (each, a "Fox Defendant") comprise the "Fox Defendants." (Id. at 1 n.1.) [Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.]

## BACKGROUND

Alleging violations of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 et seq., individuals initiated a putative class action against various lawyers and law firms. (See Docket Entry 1 at 1-4; Docket Entry 32 at 1-10; Docket Entry 180 at 1-12.) Plaintiffs subsequently filed a motion for class certification (see Docket Entry 184), to which Fox Defendants responded in December 2019 (see Docket Entry 206). As relevant here, Fox Defendants opposed Plaintiffs' certification request on the grounds that class certification would "impos[e] annihilating liability on [Fox D]efendants through the aggregation of statutory-damage awards." (Id. at 41-42.) In support of their contentions regarding the allegedly ruinous liability of the potential class, Fox Defendants relied upon affidavits (each, a "Declaration," and collectively, the "Declarations") that Fox Defendants provided regarding their assets. (See id. at 45 ("[Fox Defendants] don't have billions of dollars; a judgment will simply bankrupt the Defendants and cause innocent employees to lose their jobs. Ex. Q."); see also Docket Entries 206-18, 208-1.)

Submitted under penalty of perjury, the Declarations (i) state the relevant Fox Defendant's assets in his/her individual capacity, in terms of its total equity, or per a particular balance sheet and (ii) represent the percentage of a potential judgment that the relevant Fox Defendant could satisfy. (See generally Docket

2

Entries 206-18, 208-1.) Contending that the Declarations contained sensitive financial information (see Docket Entry 208 at 3 ("Exhibit Q contains financially sensitive information as evidence in support of a contention that the Fox Defendants' ability to satisfy a judgment sought by the Plaintiffs and their legal theory is wholly unrealistic.")), Fox Defendants moved to seal the Declarations in part (see Docket Entry 207 at 2 ("Exhibit Q has been redacted, and the redacted version will be filed publicly.")). The Court (per United States District Judge Loretta C. Biggs) granted this sealing request. (See Docket Entry 236 at 4-6.)

In response to the Declarations, Plaintiffs served written discovery on Fox Defendants. (See Docket Entries 239-1, 239-2 (collectively, the "Financial Discovery").) As relevant here, the Financial Discovery seeks information regarding "Fox Defendants['] assets, liability, and income," information that Plaintiffs described as "directly relevant to [Fox Defendants'] ability to pay a judgment, and, therefore, relevant to their defense claiming annihilating liability." (Docket Entry 239 at 12.) Fox Defendants provided largely identical responses to the Financial Discovery (see Docket Entry 239-3) (the "Discovery Responses"), signed by defense counsel (see, e.g., id. at 18). The Discovery Responses focus primarily on the assertion that "the sensitive financial information of th[at Fox Defendant] is relevant only insofar as [the defendant's] current financial condition could withstand a

3

[specific] judgment without th[at] liability being ruinous," along with the contention that "Plaintiffs' much broader request for the [particular information sought] is unnecessarily invasive and well out of proportion to the underlying factual question to be discovered." (E.g., Docket Entry 239-3 at 5-6, 8, 10, 13-15, 24, 26-27, 29-32, 34; accord id. at 17.)[2]  Instead of the requested information, the Discovery Responses provide one or two unsigned balance sheets per firm and an unsigned personal financial statement from most of the individual Fox Defendants. (See id. at 2-340.)[3]  Notwithstanding the Discovery Responses' objection to "producing information on the financial condition of [any Fox Defendant's] spouse" (e.g., id. at 31), the financial statements reflect the existence of both jointly held assets (see, e.g., Docket Entry 241 at 339 (deeming deposit accounts schedule not applicable because "[a]ll accounts are jointly held")) and greater individual assets than the Declarations acknowledge (see, e.g., Docket Entry 252-3 at 45-55 (discussing assets listed on financial statement but not included in Declaration)).

---

2  The Discovery Responses further include various boilerplate and undeveloped objections, as well as a few additional objections pertinent to only specific requests in the Financial Discovery. (See generally Docket Entry 239-3.)

3  Although the Discovery Responses indicate that each individual Fox Defendant will produce a financial statement, they do not contain such statements from Lisa Lanier and Wayne Hardee. (See id.)

4

Plaintiffs thereafter moved to compel responses to the Financial Discovery (see Docket Entry 238),[4] contending that "[they] need to discover whether the Fox Defendants have accurately represented to the Court their wealth and their ability to pay a judgment" (Docket Entry 239 at 3). In so moving, Plaintiffs primarily focused on the need to address "Fox Defendants' 'annihilating liability' defense against class certification" (id. at 5). (See generally Docket Entries 239, 245.) Plaintiffs also contended that, "since the Fox Defendants are expected to be trial witnesses, the discovery is relevant to the Fox Defendants' character for truthfulness — a cross examination subject which the Court may allow under Rule 608(b) of the Federal Rules of Evidence." (Docket Entry 239 at 5; accord Docket Entry 245 at 6-7 (asserting that, in support of Plaintiffs' Motion, "Plaintiffs also argued that the [Declarations] are subject to investigation to probe the declarants' truthfulness — a topic that may be relevant at trial").) Fox Defendants opposed Plaintiffs' Motion on, inter alia, proportionality grounds. (See Docket Entry 244 (the "Opposition") at 6-14.) In particular, Fox Defendants maintained that they already "gave [D]eclarations about their net worth" (id. at 10; accord id. at 17) and the potential business harm they

---

4 More specifically, Plaintiffs moved to compel responses to Request 3 through Request 9 of the Financial Discovery served on individual Fox Defendants and to all of the Financial Discovery served on entity Fox Defendants. (See Docket Entry 239 at 8-12; see also Docket Entries 239-1, 239-2.)

5

"could incur from being compelled to hand over their sensitive financial information to Plaintiffs' counsel," whom they classify as "business competitors" (id. at 13), "just isn't worth it when compared to the minimal relevance of the information and the non-existent need for it at this stage of the case" (id. at 14).

In response, Plaintiffs emphasize that the three Fox Defendants' depositions taken during briefing on Plaintiffs' Motion "revealed that these [d]efendants have far greater ability to pay a judgment than they indicated in the [Declarations]." (Docket Entry 247 at 3.) For instance, Charles Hardee ("Hardee") testified that he owns property and bank accounts jointly with his wife. (Docket Entry 252-1 at 48-49, 86-87.) He further testified that he completed a financial statement for PNC Bank in connection with his beach house "this year" (id. at 41; see also id. at 45 (explaining that Hardee updated previous financial statement for PNC in 2020)), which statement included the jointly owned property (see id. at 47-48). However, Hardee omitted such property — which includes a beach house, his primary residence, and a rental property acquired in 2019 — on the financial statement that he provided in response to the Financial Discovery (see id.) and in calculating his assets for his Declaration (see Docket Entry 208-1 at 7). Yet, Hardee testified that he paid cash for the rental property and also paid down outstanding debt on the beach house within the last year. (See Docket Entry 252-1 at 92-93.) Hardee further testified that

6

he listed the three bank accounts he jointly owns with his wife on the PNC financial statement, but not on the financial statement offered in discovery, even though he owns no individual bank accounts.  (See id. at 48-49.)

James Farrin ("Farrin") likewise testified that he regularly provides a financial statement to First Citizens Bank that includes information on assets he owns jointly with his wife.  (Docket Entry 252-2 at 28, 30.)[5]  He further acknowledged that he has "never provided a document excluding [his] joint accounts to a bank" (id. at 31).  (See id. at 32.)  Farrin also testified that he and his wife own joint bank and investment accounts, as well as a limited liability company that owns their beach house.  (See id. at 72-74.)  Accordingly, Farrin conceded that he "ha[s] substantial joint assets that are not disclosed in [his D]eclaration under penalty of perjury."  (Id. at 71-72.)[6]

Farrin further explained that a firm's balance sheet provides only "a snapshot of the firm at a period in time" (id. at 58; accord id. at 21), such that "a firm could have[] a billion dollars in cash one day and distribute that the same day, and then a balance sheet run the following day would not show that billion

_____

5  Farrin also indicated that, although he does not include the information on his financial statement, the bank receives a separate document detailing the deferred compensation to which he possesses entitlement.  (See id. at 74-75.)

6  He also agreed that "the vast bulk of the money, money or assets, that's in [his and his wife's] joint names has come from [his] work with James Scott Farrin P.C."  (Id. at 97.)

dollars in cash" (id. at 21). Farrin also testified that the balance sheets provided for James S. Farrin, P.C. (the "Farrin Firm") in response to the Financial Discovery constitute "end of year balance sheets which" present "typically a lower watermark because [Farrin Firm is] an S Corp and [they] are doing what [they] can to reduce tax liability" (id. at 56). (See id. at 55-56; see also id. at 60 (agreeing that "to get a meaningful evaluation of the value of the firm and what the firm is worth [one would] have to consider more than the balance sheet").) Farrin also noted that neither the provided balance sheets nor his Declaration account for the value of the Farrin Firm's current caseload. (See id. at 108-09.) Farrin additionally acknowledged that he possesses "the authority to direct the financial operations of the [Farrin F]irm," including "what funds get distributed versus what funds get retained" (id. at 20) and any deferred compensation awards (id. at 78), as well as deciding the amount of his annual bonus (see id. at 95) and his salary (id. at 78-79).

Donald Marcari ("Marcari") similarly testified that his Declaration "[i]s not accurate," as it, inter alia, excludes certain real estate assets (Docket Entry 252-3 at 55),[7] including

_____

7  The testimony reflects a more than twelvefold difference between the amounts identified in the Declaration as individual assets and the amounts acknowledged in Marcari's deposition as individual assets. (Compare Docket Entry 208-1 at 22, with Docket Entry 247-3 at 54.) Marcari further testified (on May 8, 2020) that he realized the discrepancy "probably two days ago" and had "talked to coun[se]l about [withdrawing his Declaration]" but had
(continued...)

8

a townhouse that he and another individual purchased, with no debt, in October 2019 (id. at 47-48). Marcari also acknowledged that he possesses a joint stock account and certain real estate with his estranged wife. (See Docket Entry 252-3 at 56-57, 63-64, 71-72.)

Particularly given this testimony, Plaintiffs contended, "[t]he Court should compel the Financial Discovery so that Plaintiffs and the Court may have a more accurate picture of the financial facts that the Fox Defendants voluntarily presented to the Court in December 2019." (Docket Entry 247 at 3.) Finally, the parties moved to seal certain information submitted in support of Plaintiffs' Motion. (See Docket Entries 240, 243, 246, 252.)

After the parties finished briefing Plaintiffs' Motion, the Court (per United States District Judge Loretta C. Biggs) issued an opinion denying Plaintiffs' class certification motion on typicality grounds. (See Docket Entry 284 (the "Certification Opinion") at 24.) In so doing, the Court declined to address Fox Defendants' annihilating liability contentions. (See id. at 24 n.16 ("Whether a district court should consider the likelihood of ruinous liability at the certification stage is the subject of some

---

7(...continued)
not done so. (Docket Entry 252-3 at 56.) Notably, Marcari's unsigned financial statement, dated as of March 30, 2020, and produced on April 23, 2020, reveals this significant discrepancy (see id. at 54-56; see also Docket Entry 241 at 234-39), yet Fox Defendants' Opposition, filed May 7, 2020, does not address this issue (see generally Docket Entry 244); instead, it opposes the Financial Discovery on the grounds that "Fox Defendants gave [D]eclarations about their net worth" (id. at 10).

disagreement. However, because this Court has decided not to certify the proposed class for a variety of other reasons, it chooses not to wade into that debate here." (citations omitted)).)

## DISCUSSION

### I. Plaintiffs' Motion

By declining to engage on the annihilative liability issue, the Certification Opinion effectively moots the main justification for Plaintiffs' Motion (see, e.g., Docket Entry 239 at 12 (asserting that the Financial Discovery "seeks information about the Fox Defendants['] assets, liability, and income — all of which are directly relevant to their ability to pay a judgment, and, therefore, relevant to their defense claiming annihilating liability")). Accordingly, potential impeachment serves as the only extant grounds for compelling the Financial Discovery. (See Docket Entries 239, 245.) Under the circumstances, the Court finds that proportionality concerns preclude compelled compliance with the Financial Discovery. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."); Fed. R. Civ. P. 26 advisory committee's notes, 2015 Amendment ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.").

10

In this regard, it bears emphasis that, although arguably necessary for evaluating the Declarations' specific averments, the Financial Discovery seeks a significant amount of sensitive financial information. (See Docket Entries 239-1, 239-2.) In addition, as detailed above, both the financial statements provided in response to the Financial Discovery and the deposition testimony obtained during briefing on Plaintiffs' Motion reveal ample impeachment evidence, including various "inconsistencies between the [Declarations] and the admissions obtained in [the] depositions" (Docket Entry 247 at 2). Given such developments, the Financial Discovery has become disproportionate. The Court therefore will deny Plaintiffs' Motion.

Ordinarily, the Court must order expense-shifting when it denies a motion to compel. See Fed. R. Civ. P. 37(a)(5)(B). However, "the [C]ourt must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." Id. Here, Fox Defendants made their specific financial condition, including net worth, and the availability of assets a relevant issue when they relied upon the Declarations in support of their annihilative liability contentions. Only the subsequent mooting of those contentions by the Certification Opinion rendered the Financial Discovery disproportionate. Accordingly, the Court finds that Plaintiffs' Motion "was substantially justified," Fed. R. Civ. P. 37(a)(5)(B), as well as

11

that "other circumstances make an award of expenses unjust," id. Therefore, each party shall bear its own expenses on Plaintiffs' Motion.

## II. Sealing Motions

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). As relevant here, the common-law presumption of access "can be rebutted if countervailing interests heavily outweigh the public interests in access," and "the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Id. (internal quotation marks and brackets omitted). "[W]hether to grant or restrict access to judicial records" under the common law "is a matter of a district court's 'supervisory power,' and it is [a decision] 'best left to the sound discretion of the [district] court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" Id. (final set of brackets in original).

"When presented with a request to seal judicial records," the Court begins by "determin[ing] the source of the right of access

12

with respect to each document," as "only then can it accurately weigh the competing interests at stake." Id. at 576 (internal quotation marks and brackets omitted). The Court must then evaluate the competing interests under the following approach. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Id.[8] Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id.

"Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id. This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

---

8  In this regard, Plaintiffs filed the First Sealing Motion on April 30, 2020 (see Docket Entry 240 at 3), and the Second Sealing Motion on May 11, 2020 (see Docket Entry 246 at 3). Accordingly, all interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," Washington Post, 386 F.3d at 576, yet the docket reflects no objections to the Sealing Motions (see Docket Entries dated Apr. 30, 2020, to present).

However, "the mere filing of a document with a court does not render the document judicial." In re Policy Mgmt. Sys. Corp., 67 F.3d 296 (table), Nos. 94-2254 & 94-2341, 1995 WL 541623, *4 (4th Cir. 1995); see also United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) ("The unclassified appendix contains a wide variety of materials, such as pleadings, hearing and deposition transcripts, and some discovery materials. Some of these documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." (citing United States v. Amodeo, 44 F.3d 141, 145-46 (2d Cir. 1995))); Amodeo, 44 F.3d at 145 ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access. We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document."). Rather, "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013).

Accordingly, "[b]ecause discovery motions" often "involve procedural, rather than 'substantive' rights of the litigants," Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL

14

1418312, at *9 (M.D.N.C. Apr. 2, 2010), courts have found that no right of public access attaches to materials filed with discovery motions. See id. at *9-10; see also, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001) ("The better rule is that material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right, and we so hold."). In such circumstances, the "good cause" standard of Rule 26(c) applies to the sealing request. See Kinetic Concepts, 2010 WL 1418312, at *10; see also BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc., No. 1:10cv276, 2015 WL 12991090, at *4 (M.D.N.C. July 21, 2015) ("If the[ relevant] documents only asked this court to rule on procedural discovery grounds, this court would only need to find that good cause existed for sealing these documents.").

Alternatively, to the extent that the materials qualify as "'judicial records' because they were filed with the objective of obtaining judicial action or relief pertaining to [the Motion]," In re U.S., 707 F.3d at 291, the common-law right of access applies, see BASF Agro, 2015 WL 12991090, at *4 (explaining that "it may also be that these briefs and exhibits are judicial records because they were filed with the objective of . . . supporting . . . a motion to compel" and, as such, "the common-law presumption of

15

access attaches to these documents"). Thus, "because the [United States Court of Appeals for the] Fourth Circuit has not definitively resolved the access right question in the discovery motion context, the Court will conduct the 'competing interests' balancing test that would govern if the common-law access right did apply, along with the 'good cause' inquiry." Kinetic Concepts, 2010 WL 1418312, at *10.

Under Rule 26(c), "[t]he [C]ourt may, for good cause, issue an order to protect a part undue burden or expense y or person from," inter alia, "undue burden or expense," Fed. R. Civ. P. 26(c)(1), including by restricting access to certain materials, see, e.g., Fed. R. Civ. P. 26(c)(1)(F)-(H) (authorizing sealing of depositions, confidential commercial information, and "specified documents or information"). "Similarly, the common law presumption of access may be overcome if competing interests outweigh the interest in access, such as where a need exists to prevent court files from becoming sources of business information that might harm a litigant's competitive standing." Kinetic Concepts, 2010 WL 1418312, at *10 (internal quotation marks, brackets, and citation omitted). Accordingly, under both Rule 26(c) and the common-law sealing analysis, courts frequently limit disclosure of sensitive financial information. (See, e.g., Docket Entry 236 at 4-5 (authorizing sealing of financial information in Declarations); Docket Entry 183 at 1-3 (defining, in Consent Protective Order

16

entered "pursuant to Rule 26" (id. at 1), "'Protected Information'" (id. at 2) to include "[f]inancial information and records of the [d]efendant law firms and named individual defendants" (id. at 3)).)

Here, the Sealing Motions seek to seal certain information in Plaintiffs' exhibits and reply memorandum in support of Plaintiffs' Motion (the "Reply"). (See Docket Entry 240 at 1-2; Docket Entry 246 at 1-2.) In particular, the First Sealing Motion requests sealing of financial information, including the financial statements and balance sheets, in the Discovery Responses. (See Docket Entry 240 at 1-2; see generally Docket Entries 239-3, 239-4.) In addition, the Second Sealing Motion asks the Court to seal, inter alia, references to certain financial information in Plaintiffs' Reply and supporting exhibits thereto, which contain deposition testimony from Farrin, Hardee, and Marcari. (See Docket Entry 246 at 1-2; see generally Docket Entries 245, 252-1 to 252-4.)[9] Although Plaintiffs generally express "no opinion" as to the confidentiality of the requested information (Docket Entry 240 at

---

    9  Plaintiffs filed a redacted version of their Reply, reflecting "agreed upon" redactions (Docket Entry 246 at 2; see generally Docket Entry 245), as well as placeholder deposition transcript exhibits (see Docket Entries 245-1 to 245-3) to permit Fox Defendants to specify, under the parties' consent protective order, "which portions of the deposition transcripts are claimed to ultimately be entitled to redaction" (Docket Entry 246 at 2). Fox Defendants thereafter submitted redacted versions of the deposition transcripts and exhibits. (See Docket Entries 252-1 to 252-4.)

2; Docket Entry 246 at 3),[10] Fox Defendants maintain that the "sensitive financial information" (Docket Entry 243 at 1; Docket Entry 252 at 1) in the relevant materials merit sealing (see generally Docket Entries 243, 252).

Under the circumstances, the Court finds that much of the information that the parties seek to redact qualifies as the type of sensitive financial information that warrants protection from public disclosure. See, e.g., Feed.ing BV v. Principle Sols., LLC, No. 14-C-1241, 2015 WL 136402, at *4 (E.D. Wis. Jan. 8, 2015) (granting request to seal balance sheets); Randolph v. ADT Sec. Servs., Inc., Civ. Action No. 09-1790, 2012 WL 2234362, at *11 (D. Md. June 14, 2012) (sealing "documents [that] contain [an individual's] tax returns and other personal financial data or discuss such information"). Further, as to the exhibits, "the parties have narrowly tailored their proposed redactions to allow for public access to the vast majority of the filings — a less drastic alternative to sealing the documents in their entireties" (Docket Entry 236 at 4). (See Docket Entries 239-3, 239-4, 252-1 to 252-4.)

However, the proposed redactions in the Reply sweep beyond protection of Fox Defendants' specific financial information, to encompass, for instance, Plaintiffs' assertion that "there is

_____

10 Plaintiffs note, however, that "if any of the redacted information provided by the Fox Defendants is inaccurate, then[, in Plaintiffs' view,] it is not entitled to protection." (Docket Entry 246 at 2-3.)

reason to believe that some, if not all, of the Fox Defendants have been less than candid with the Court regarding the very topic on which Plaintiffs seek discovery" (Docket Entry 247 at 11; cf. Docket Entry 245 at 11), as well as Plaintiffs' assertion that the deposed Fox Defendants' "testimony was not consistent with the spirit, and in some instances, the letter of the [Declarations]. Their May 2020 deposition testimony revealed that these Defendants have far greater ability to pay a judgment than they indicated in the December 2019 [Declarations]" (Docket Entry 247 at 3). Fox Defendants provide no justification for sealing such information (see Docket Entry 252) and the Court finds that none exists, particularly given that resolution of Plaintiffs' Motion necessitated disclosure of at least the general tenor, if not the exact wording, of much of the information that the parties seek to redact in Plaintiffs' Reply, see, e.g., Washington Post, 386 F.3d at 579 ("[O]nce announced to the world, the information lost its secret characteristic." (internal quotation marks omitted)). Accordingly, the Court finds that sealing remains proper only as to the specific monetary amounts identified on pages 2, 3, and 7 of the Reply.

Similarly, in light of its disclosure herein, the information in the deposit account schedule on page 339 of the Discovery Responses does not qualify for sealing. (See Docket Entry 241 at 339.) Likewise, because unredacted testimony from Hardee's

19

deposition testimony reveals that the 2018 "balance sheet show[s] that [his firm] w[as] insolvent" (Docket Entry 252-1 at 52), no justification exists for redacting that information elsewhere in his deposition.  See Washington Post, 386 F.3d at 579.[11]  Finally, the redacted version of the Marcari deposition transcript omits exhibits containing publically available information.  (Compare Docket Entry 252-3, and Docket Entry 252-4, with Docket Entry 247-3 at 96-101.)  Fox Defendants offer no explanation for this omission (see generally Docket Entry 252), and the Court discerns no reason for sealing the particular exhibits.  Accordingly, the Court will direct the parties to publically file those withheld exhibits.

## CONCLUSION

The Certification Opinion moots the primary justification for Plaintiffs' Motion and proportionality concerns prevent compelled compliance with the Financial Discovery solely for impeachment purposes.  Additionally, Fox Defendants have justified sealing their undisclosed financial information, but not any other information in the Reply or exhibits.

---

11  Notwithstanding this disclosure, the balance sheet itself properly remains subject to sealing because it contains detailed information regarding the firm's assets and liabilities that extend beyond the simple fact that, on paper, the firm's liabilities outstrip its assets on a particular date.  See, e.g., Feed.ing BV, 2015 WL 136402, at *4 (granting request to seal balance sheets, noting that they "provide particular breakdowns and dollar amounts allocated to designated areas of business operations and would be uniquely valuable if made available to [the defendant's] competitors").

20

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion (Docket Entry 238) is **DENIED.**

**IT IS FURTHER ORDERED** that the First Sealing Motion (Docket Entry 240) is **GRANTED IN PART** and **DENIED IN PART** as follows:  the First Sealing Motion is granted except insofar as it seeks to redact the information contained in the deposit accounts schedule (Schedule 1) on page 339 of the Discovery Responses (see Docket Entry 239-3 at 339).  On or before September 8, 2020, Plaintiffs shall file a corrected version of the relevant financial statement (id. at 338-40) that removes such redaction.

**IT IS FURTHER ORDERED** that the Second Sealing Motion (Docket Entry 246) is **GRANTED IN PART** and **DENIED IN PART** as follows:  the Second Sealing Motion is granted except insofar as it seeks redaction of (i) any information other than the specific monetary amounts identified on pages 2, 3, and 7 of the Reply, (ii) references in Hardee's deposition to the insolvent nature of Hardee's firm on its 2018 balance sheet, and (iii) the publically available exhibits to Marcari's deposition (see Docket Entry 247-3 at 96-101).  On or before September 8, 2020, Plaintiffs shall file a corrected version of their Reply (Docket Entry 245) and Fox Defendants shall file corrected versions of the Hardee deposition

(Docket Entry 252-1) and Marcari deposition exhibits (Docket Entry 252-4).

This 1st day of September, 2020.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**