IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM PARKER GAREY, et al., )<br>*on behalf of themselves and others similarly situated*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JAMES S. FARRIN, P.C., et al., )<br>)<br>Defendants. ) | | 1:16CV542 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action alleging that the above-named Defendants violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.* (ECF Nos. 1, 32, 180.) Before the Court is the Fox Defendants'[1] Motion to Dismiss Plaintiffs' Second Amended Complaint filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 188.) For the reasons set forth below, this motion is granted in part and denied in part.

---

[1] "Fox Defendants" refer collectively to James S. Farrin, P.C. d/b/a Law Offices of James Scott Farrin; James S. Farrin; Marcari, Russotto, Spencer & Balaban, P.C.; Donald W. Marcari; Riddle & Brantley, L.L.P.; Sean A. Cole; Wallace Pierce Law, PLLC; Jared Pierce; Van Laningham & Associates, PLLC d/b/a Bradley Law Group; R. Bradley Van Laningham; Lanier Law Group, P.A.; Lisa Lanier; Crumley Roberts, LLP; Chris Roberts; Hardison & Cochran, PLLC; Benjamin T. Cochran; Hardee & Hardee LLP; Charles Hardee; G. Wayne Hardee; and Katherine E. Andrews-Lanier.

**I.      BACKGROUND**

The Court first incorporates by reference the factual background set forth in its July 23, 2020, Memorandum Opinion and Order denying class certification. (*See* ECF No. 284 at 1–3.) In addition, the Court will set forth a brief summary of the procedural history that has led to the current posture.

Plaintiffs filed their initial Complaint on May 27, 2016, and later on August 22, 2016, filed their First Amended Complaint. (ECF Nos. 1, 32.) On September 28 and November 29, 2016, Defendants filed three motions to dismiss Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. (ECF Nos. 60, 62, 79.) The Court denied each motion and held, among other rulings, that Plaintiffs "have plausibly alleged sufficient facts to establish standing to sue under the DPPA." (ECF No. 93 at 23.)

On October 24, 2019, Plaintiffs filed a Second Amended Complaint with, as explained below, relatively minor changes. (ECF No. 180.) Fox Defendants contend that the differences between the First and Second Complaints are material and now move to dismiss this complaint pursuant to Rules 12(b)(1) and 12(b)(6), (ECF Nos. 188, 189), arguing that (1) merely obtaining public information is not sufficient to establish an Article III injury-in-fact; (2) Plaintiffs are not entitled to recover liquidated damages because they have not suffered "actual damages"; and (3) injunctive relief is unavailable in this case. (ECF No. 189 at 2.)[2] Fox Defendants additionally seek to take advantage of intervening discovery between the First and Second

---

[2] Fox Defendants additionally move to dismiss a claim alleging a violation of the Uniform Voidable Transactions Act ("UVTA") under N.C. Gen. Stat. §§ 39-23.1 *et seq*. (ECF No. 189 at 18 n.4.) As Fox Defendants note in their brief, the resolution of this claim depends only on the Court's decision on standing. (*See id.* (arguing for a dismissal under Rule 12(b)(6) "because it fails to state a claim upon which relief can be granted").) Thus, given the Court's finding below that Plaintiffs continue to plausibly allege sufficient facts to support standing, this motion must likewise fail as to the UVTA claim.

Amended Complaints to highlight new evidence and mount both facial and factual challenges to Plaintiffs' allegations. (*Id.* at 6–7.)

## II. ARTICLE III STANDING

Fox Defendants first challenge Plaintiffs' claim to standing and argue that the mere obtainment of DPPA-protected information is a "bare statutory violation" that does not satisfy Article III's injury-in-fact requirement. (ECF No. 189 at 6–8.)

The jurisdiction of a federal court is limited to cases and controversies under Article III of the United States Constitution. U.S. Const. art. III, § 2. Standing to sue, therefore, "ensure[s] that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish constitutional standing at the motion to dismiss stage, Plaintiffs must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Where, as here, a case is at the pleading stage, [Plaintiffs] must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

To establish an injury-in-fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court held in *Spokeo* that "intangible injuries can . . . be concrete" but specifically rejected the idea that the violation of a statute "automatically satisfies the injury-in-fact requirement" on its own when merely a "bare procedural violation" has occurred. *Id.* at 1549. The Court did

3

note, however, that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and, in these instances, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* To determine whether a statutory violation is the type of violation that meets this bar, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*

As stated earlier, Fox Defendants lodge both facial and factual challenges. (ECF No. 189 at 6.) In a facial challenge, the facts alleged in the complaint are generally regarded as true and the plaintiff is entitled to the same protections available under a Rule 12(b)(6) motion.[3] *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). When a defendant, however, challenges "the veracity of facts underpinning subject matter jurisdiction," they make a factual challenge. *Kerns v. U.S.*, 585 F.3d 187, 193 (4th Cir. 2009). In a factual challenge, a court may go beyond the complaint's mere allegations and consider whether facts that have been developed in evidentiary proceedings are plausible to support the plaintiff's pleading. *Id.* In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *id.* at 192, and "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence," *U.S. ex rel Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

The Court will first consider Fox Defendants' facial challenge.

---

[3] A motion to dismiss filed pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A.  Facial Challenge

As outlined above, this Court earlier addressed—and rejected—a facial challenge to Plaintiffs' Article III standing in an order dated September 29, 2017, denying motions to dismiss Plaintiffs' First Amended Complaint.  (ECF No. 93 at 15.)  The Court concluded that the allegations of injury stemming from Defendants' alleged obtainment, use, and disclosure of DPPA-protected information in the First Amended Complaint were sufficiently concrete to plausibly support Article III standing.  (ECF No. 93 at 9.)

On September 30, 2019, Plaintiffs brought a motion for leave to file a Second Amended Complaint.  (ECF No. 176.)  In that motion, Plaintiffs argued that the new complaint would "streamline[] the case" and seek liquidated damages "only for the Defendants' *obtaining* of Plaintiffs' personal information—a change which sidesteps any First Amendment defense . . . ."  (*Id.* at 3.)  More recently, in their response to the current motion to dismiss, Plaintiffs asserted that removing the question of whether the Defendants disclosed or used the information "obviates the need for the parties and the Court to untangle a large body of First Amendment case law on advertising and commercial speech."[4]  (ECF No. 213 at 3.)

Fox Defendants argue, however, that such a modification would be "fatal to Plaintiffs' tenuous grasp on Article III standing" because it narrows the pleading to such an extent that the complaint no longer establishes facts essential to this Court's previous holding that an injury-in-fact has been plausibly alleged.  (ECF No. 189 at 2.)

---

[4] At this stage, the Court need not resolve the question of whether changes in the Second Amended Complaint accomplish Plaintiffs' stated purpose of avoiding First Amendment scrutiny.

5

Both parties appear to accept Plaintiffs' assertion that the Second Amended Complaint alleges only an obtainment violation of the DPPA, and both press their cases under the supposition that such a change now defines the contours of the litigation. (*See, e.g.*, *id.* at 1–2 (Fox Defendants' stating that "Plaintiffs' sole legal claim is that Defendants violated the DPPA merely by *obtaining* public accident reports that identify them").) But it is not clear that such a consequential difference exists between the two relevant complaints.

"[T]he plaintiff is the master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987); 14C Charles Alan Wright, Arthur R. Miller, Joan E. Steinman, Mary Kay Kane & A. Benjamin Spencer, *Federal Practice and Procedure* § 3722.1 (Rev. 4th ed. 2020). That said, while courts have allowed plaintiffs under this doctrine to choose, for instance, which claims they bring or who they elect to sue, courts "must focus on the facts plead, and the relief requested, by the plaintiff in the complaint" and not look simply at whether "a cause of action is couched" in certain terms. *Air Prods. & Chems., Inc. v. Reichhold Chems., Inc.*, 755 F.2d 1559, 1561, 1563 (Fed. Cir. 1985) (considering whether a claim invoked patent law and thus federal question jurisdiction or was simply a contract dispute). Indeed, "it is the facts and substance of the claims alleged, not the jurisdictional labels attached, that ultimately determine whether a court can hear a claim." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020). Thus, in evaluating Fox Defendants' arguments, the Court looks not to Plaintiffs' goals as stated in their briefs, but rather to the language and allegations of the Second Amended Complaint itself.

Before looking at the language of the Second Amended Complaint, it is first necessary to recount the basis for this Court's previous ruling. The Court concluded that Plaintiffs

plausibly alleged the existence of concrete harms that were sufficient to meet the injury-in-fact requirement when they claimed:

> (i) that Defendants disclosed their protected personal motor vehicle information, "at a minimum, to employees of the postal or delivery service that delivered each mailing, as well as to Defendants' office staff or contractors who participate in addressing and sending the mailings"; (ii) that each Plaintiff-Driver "sustained *actual damages in having to retrieve the mailings addressed to them from a delivery person, from his or her entryway or mail receptacle or by having his or her privacy invaded* by disclosure of his or her name or address in connection with a potential need for legal services"; and (iii) that "each Plaintiff-Owner sustained *actual damages* by having his or her privacy invaded by Defendants' obtaining his or her name and address in violation of law *and in having his or her information obtained, disclosed and used for marketing purposes without his or her consent*[.]"

(ECF No. 93 at 9 (citations omitted).) With minor variations that simply add to this language, such as stating that Defendants "knowingly" obtained the information, the Second Amended Complaint repeats these claims nearly verbatim. (*Compare* ECF No. 32 ¶¶ 126–28, *with*, ECF No. 180 ¶¶ 125–27.) A comparison of the two complaints reveals that Plaintiffs have used essentially the same words to allege the same harms; if anything, the changes enhance the original factual allegations.

Given that the Court has already determined such descriptions rise to the level of a concrete injury, the Court must then consider whether there are other substantive changes to the Second Amended Complaint that might require an outcome that differs from the Court's earlier ruling. The most obvious changes limiting the pleadings to obtainment only occur in two paragraphs of the First Claim for Relief. First, Plaintiffs originally requested a "permanent injunction prohibiting Defendants from obtaining or using personal information from motor vehicle records for marketing purposes." (ECF No. 32 ¶ 148.) The corresponding paragraph now requests a permanent injunction from "obtaining" personal information only. (*Compare*

7

ECF No. 32 ¶ 148, *with*, ECF No. 180 ¶ 156.) Additionally, Plaintiffs have abandoned requests for an injunction prohibiting the sending of "mailings" and "letters" for the purpose of legal marketing as well. (*Id.*)

Two paragraphs later, Plaintiffs request liquidated damages because "Defendants knowingly obtained Plaintiffs' personal information" that was DPPA-protected. (ECF No. 180 ¶158.) This departs from language in the previous amended complaint that asked for the same relief "[b]ecause Defendants obtained *and used*" such information. (*Compare* ECF No. 32 ¶ 150, *with*, ECF No. 180 ¶ 158 (emphasis added).)

However, while it is true that these two paragraphs now omit the word "use," the same cannot be said for the rest of the complaint. Indeed, Plaintiffs allege that Defendants "used" DPPA-protected information twenty-four times in the Second Amended Complaint and allege unlawful "disclosure" an additional twenty times, including in the First Claim for Relief. (*See, e.g.*, ECF No. 180 ¶ 149 ("Each Defendant knowingly obtained, disclosed, and used one or more Plaintiff's protected information, from a motor vehicle record, for the purpose of marketing that Defendant's legal services.").) In addition to incorporating earlier allegations of use and disclosure in their claim for relief expressly, (*id.* ¶ 147), Plaintiffs articulate their claims for actual damages by simply referring to the harms "described above," (*id.* ¶ 157).

These two changes—coupled with the Plaintiff's statement that they intend to seek recourse for obtainment only—are insufficient to undercut the adequacy of the facts Plaintiffs have plausibly alleged and thus do not lead to a different outcome in the injury-in-fact analysis. The Court has already ruled on whether such allegations rise to an injury-in-fact and have

8

Case 1:16-cv-00542-LCB-LPA Document 313 Filed 09/28/20 Page 8 of 18

found them to be sufficient, (ECF No. 93 at 9), and now confirms that Plaintiffs' Second Amended Complaint alleges sufficient harms to defeat a facial challenge.[5]

Even assuming *arguendo* that Plaintiffs were to allege only an obtainment violation, the weight of case law supports the argument that they still have established a concrete injury-in-fact. In determining whether a harm rises above a bare procedural violation, the Fourth Circuit has adopted the D.C. Circuit's test that asks whether a statute was violated and, if so, whether the defendant "suffers, by [the violation of the statute], the type of harm *Congress sought to prevent.*" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345–46 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)) (emphasis supplied by the Fourth Circuit).

In this case, Plaintiffs are able to demonstrate that the harm that allegedly resulted from any unlawful obtainment of their information alone was the type of harm Congress intended to prevent.[6] The U.S. Supreme Court has held that one "important objective of the DPPA" was "to restrict disclosure of personal information contained in motor vehicle records to businesses for the purpose of direct marketing and solicitation." *Maracich v. Spears*, 570 U.S. 48, 66–67 (2013). The Court also found that "Congress chose to protect individual privacy by requiring a state DMV to obtain the license holder's express consent before permitting the

---

[5] Both parties have additionally briefed the Court on whether the harms that Plaintiffs have suffered are fairly traceable to the actions of the Defendants. Given the Court's finding that the Plaintiffs continue to allege the obtainment, use, and disclosure of DPPA-protected information, the Court finds that it need not address these arguments at any length other than to confirm this the question of traceability is no barrier to finding that Plaintiffs have sufficiently alleged an injury-in-fact that may confer standing.

[6] Fox Defendants do not appear to contest that they obtained accident report information. (*See* ECF No. 189 at 1–2.)

9

disclosure, *acquisition*, and use of personal information for bulk solicitation." *Id.* at 67 (emphasis added).

Additionally, the Fourth Circuit has applied *Dreher*'s test liberally in the context of privacy-related violations, holding that when a harm "is both particular to each person and imposes a concrete burden on his privacy, it is sufficient to confer standing." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (discussing at what point alleged violations of the Telephone Consumer Protection Act became a cognizable, concrete injury). Otherwise, the court held, the analysis becomes "nothing more than an attempt to dismember the [statute], converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang." *Id.*

At least one court that specifically addressed whether an attorney might lawfully use motor vehicle records to solicit clients has additionally held that obtainment under the DPPA is sufficient on its own to amount to an injury-in-fact. *Whitaker v. Appriss, Inc.*, 229 F. Supp. 3d 809, 817 (N.D. Ind. 2017) (holding that "DPPA standing begins at least at the point of unlawful disclosure or obtainment of the plaintiffs' personal information"). Whereas *Spokeo* noted the harmlessness of an incorrect zip code, the court in *Whitaker* found an analogous harmless DPPA violation would be the disclosure of a person's first name alone which "might violate the letter of the DPPA, but it presents no actual risk to privacy." *Id.* at 814. However, when records are acquired that combine several personal facts together, a harm has been realized. In the words of the court, Congress made the judgment that, "once a plaintiff's

10

information is disclosed or obtained for a prohibited purpose, the damage is already done."[7] *Id.* at 815.

Thus, the Court finds that Plaintiffs, in their Second Amended Complaint, plausibly allege sufficient facts to withstand a facial challenge to their standing.

### B. Factual Challenge

Fox Defendants additionally raise a factual challenge to Plaintiffs' standing. As noted above, when a defendant makes a factual challenge, a court may go beyond the complaint's mere allegations and consider whether facts that have been developed in evidentiary proceedings plausibly support the plaintiff's pleading. *Kerns*, 585 F.3d at 193. In such a case, "the presumption of truthfulness normally accorded a complaint's allegations does not apply," *id.* at 192, and "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence," *U.S. ex rel Vuyyuru*, 555 F.3d at 347.

Since the First Amended Complaint was filed, the parties have developed the evidentiary basis through a series of depositions. Fox Defendants allege that, under the current record, Plaintiffs have not met their burden of establishing facts that would plausibly allege a concrete injury and go so far as to argue that individual Plaintiffs have "admitted" in depositions that "their only claimed injury is the mere violation of the DPPA." (ECF No. 189

---

[7] Fox Defendants also point to the Fourth Circuit's decision in *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) to argue that "plaintiffs do not have standing when they merely fear what someone might do with personal information." (ECF No. 221 at 8.) But *Beck* is distinguishable because plaintiffs in that case alleged that an "enhanced risk of future identity theft" was a concrete injury and thus the court was concerned with whether this "threatened injury" was "sufficiently imminent." *Beck*, 848 F.3d at 274. But, as in *Whitaker*, the instant case addresses an alleged harmful activity that has already taken place and does not lean simply on a harm that might happen in the future.

at 7.) As evidence of this allegation, Fox Defendants cite to the testimony of Plaintiffs Garey and Clevenger. (*Id.* at 7.)

Fox Defendants are correct in noting that Plaintiff Garey, in extensive testimony, agreed with the statement that "the mere violation of the statute is the injury." (ECF No. 201-12 at 82.) But such a statement must be understood in its full context. Moments earlier, for instance, Plaintiff Garey also stated that Defendants

> obtained and used my information through means that . . . aren't really permitted by the DPPA. And so, they've exposed my information to people who really didn't need to see it. And they've also . . . wasted my time somewhat just because I had to . . . go through their spam mail.

(ECF No. 201-12 at 75.)

In this testimony, Garey points directly to the harms Plaintiffs cite in the Second Amended Complaint and that this Court has ruled are a sufficient basis for an injury. (*See* ECF Nos. 180 ¶¶ 125–27; 93 at 9–15.) Garey additionally specified harms at another point in the deposition that were the result of obtainment alone by noting that "there were people that were seeing my information . . . when they were gathering the information to compile the letters that wouldn't have been seeing it otherwise." (ECF No. 201-12 at 75.) Though it is true that Garey affirmed a deposing lawyer's statement that "the mere violation of the statute" is one way to define the injury, (*id.* at 82), such a statement may only be read fairly in the context of his earlier specific identification of the harms he has alleged and not as an adoption of magic words only someone familiar with the law would take to carry a dispositive weight.

To be sure, not all Plaintiffs articulated their injuries in their depositions with the same clarity, and Fox Defendants are right to point out that the factual record is in some cases underdeveloped or contradictory. (*See, e.g.*, ECF No. 201-9 at 78–80.) That said, "the presence

12

of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. F. for Acad. & Institutional Rts. Inc.*, 547 U.S. 47, 52 n.2 (2006)). Thus, the Court finds that Garey's deposition testimony alleges facts that permit Plaintiffs to withstand a factual challenge to their standing.

The remaining two elements of the standing analysis are not in dispute, and thus the Court concludes that Plaintiffs have plausibly alleged and demonstrated sufficient facts to support standing to sue under the DPPA at this stage in the litigation. Accordingly, Fox Defendants' Motion to Dismiss for lack of standing will be denied.

## III. LIQUIDATED DAMAGES

Fox Defendants next argue that Plaintiffs "cannot recover liquidated damages under the DPPA without first proving that [they have] suffered pecuniary or economic harm." (ECF No. 189 at 18.) They base this contention on the text of the statute, (*see generally id.* at 18–21), which states that "[t]he court may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500," 18 U.S.C. § 2724(b). Fox Defendants urge the Court to find that this language is "modeled on the Privacy Act of 1974" and to hold that Supreme Court precedent on the Privacy's Act "parallel provision" is controlling.[8] (ECF No. 189 at 18–20.) This interpretation, however, is unpersuasive.

---

[8] The parallel provision in the Privacy Act reads as follows:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000;

5 U.S.C. § 552a(g)(3)(B)(4).

13

It is true that the Supreme Court has held that, under the Privacy Act, "presumed damages are . . . clearly unavailable" and that a plaintiff is not entitled to the Act's express minimum amount of damages on "proof of nothing more than a statutory violation." *Doe v. Chao*, 540 U.S. 614, 620–22 (2004). However, leaving aside for now whether Plaintiffs in this case have alleged more than a statutory violation, the Court was clear that this interpretation relied on "the critical limiting phrase 'entitled to recovery,'" *id.* at 626, which does not appear in the text of the DPPA, *see* 18 U.S.C. § 2724(b)(1).

On the other hand, multiple circuits have concluded that liquidated damages are available under the DPPA even when plaintiffs have not pleaded an economic loss. For instance, the Eleventh Circuit was unequivocal in finding that "a plaintiff need not prove actual damages to recover liquidated damages for a violation of the DPPA." *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1210, 1214 (11th Cir. 2005) (noting that dicta in *Doe* suggested that a statute with language similar to the DPPA would not require proof of actual damages as a prerequisite to recovery). As the court pointed out, "[d]amages for a violation of an individual's privacy are a quintessential example of damages that are uncertain and possibly unmeasurable." *Id.* at 1213.

The Third Circuit agreed, finding that "[t]he plain language of the DPPA, Supreme Court and other precedent, and the common law of privacy all support construing § 2724(b) so as not to require actual damages to recover liquidated damages." *Pichler v. UNITE*, 542 F.3d 380, 400 (3d Cir. 2008). Though Fox Defendants argue that *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012), provides one example of a circuit disagreeing with this analysis, (ECF No. 221 at 11–12), in that case the court was analyzing a different statute,

14

was careful to distinguish *Pichler* and *Kehoe*, and made its holding based on additional language that was not found in the DPPA, *Sterk*, 672 F.3d at 537, 538–39.

While the Fourth Circuit has not issued a direct ruling on this question, it has weighed in, albeit in dicta. In *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009), the court considered whether statutory damages could be permitted with no proof of actual damages under the Stored Communications Act ("SCA"). *Id.* at 201-02. Although the court held that actual damages must be pled in the SCA (and the Privacy Act), it expressly distinguished those statutes from the DPPA and suggested similar analysis of the DPPA would end in the opposite result.[9] *Id.* at 205-06 (citing the DPPA as an example of a "simpler, unambiguous statute").

In light of the above, the Court finds that Plaintiffs' pleadings are sufficient to seek liquidated damages without the pleading of actual damages. Accordingly, Defendants are not entitled to judgment as a matter of law on this issue.

## IV. INJUNCTIVE RELIEF

In their Second Amended Complaint, Plaintiffs request "a permanent injunction prohibiting Defendants from obtaining personal information from motor vehicle records for marketing purposes." (ECF No. 180 ¶ 156.) In support of this request, Plaintiffs allege that Defendants are still using DPPA-protected information in violation of the statute and that they are likely to continue to do so. (*Id.* ¶ 155.) They base this claim for relief on the DPPA's

---

[9] Fox Defendants also claim that a more recent case, *Potocnik v. Carlson*, 2016 WL 3919950 (D. Minn. July 15, 2016), reinforces their view that actual harm must be shown. (ECF No. 221 at 12–13.) *Potocnik*, however, is not so clear-cut. On the contrary, the court ultimately held that "it would make no sense to limit DPPA plaintiffs—who rarely suffer economic injuries—to recovering only pecuniary damages." *Id.* at *12.

15

provision in § 2724(b)(4) that provides for "other preliminary and equitable relief" deemed appropriate by the Court. (*Id.* ¶ 156.)

As Fox Defendants point out, the Fourth Circuit has held that the "standing requirement applies to each claim that a plaintiff seeks to press." *Bostic,* 760 F.3d at 370 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). This means that a plaintiff must also "demonstrate standing separately for each form of relief sought." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 230 (4th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). To successfully plead for injunctive relief, a plaintiff "must establish an ongoing or future injury in fact," *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)), and "may not rely on prior harms," *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018). Any party who seeks to establish standing "must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

When Plaintiffs filed their Second Amended Complaint, they brought the action on behalf of a proposed class. (ECF. No 180 ¶ 131.) It appears that Plaintiffs relied heavily on the certification of that class to provide a factual basis for their injunctive claim, noting that Defendants "either continue[] to so obtain and use names and addresses of persons involved in accidents or could resume . . . at any time." (*Id.* ¶ 145.) One might be able to find in such a claim a sufficient factual basis for surviving a motion to dismiss if one assumes that there are members of the class who have not yet had their information obtained, used, or disclosed and thus are imminently subject to a future harm.

However, given that class certification has since been denied, (*see* ECF No. 284), Plaintiffs may no longer rely on claims of potential class members but only of those proffered by the six named plaintiffs in the case. There is no showing either in the Second Amended Complaint or in Plaintiffs' Response to Fox Defendants' Motion to Dismiss that *these* six plaintiffs are subject to any imminent harm, (*see generally* ECF Nos. 180, 213), and no dispute to any material facts. Indeed, as Fox Defendants point out, Plaintiffs do not address this issue in their brief opposing the motion to dismiss and appear to have conceded this argument.

Thus, the Court finds that Plaintiffs have failed to meet their burden in support of this allegation and must therefore grant the motion to dismiss Plaintiffs' claim for injunctive relief.

## IV.  CONCLUSION

The Court concludes that Plaintiffs have plausibly alleged sufficient facts to establish standing to sue under the DPPA to withstand both a facial and factual challenge and may be entitled to liquidated damages. However, the Court also concludes that the Plaintiffs have failed to plausibly allege sufficient facts to support standing for injunctive relief. Accordingly, Fox Defendants' motion to dismiss Plaintiffs' First Amended Complaint for lack of standing under Rules 12(b)(1) and 12(b)(6) will be granted as to the dismissal of Plaintiffs' claim for injunctive relief and denied as to whether Plaintiffs have sufficiently alleged Article III standing and the availability of liquidated damages.

For the reasons stated herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that the Fox Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, (ECF No. 188), is GRANTED as to the dismissal of

Plaintiffs' claim for injunctive relief and DENIED as to whether Plaintiffs have sufficiently alleged Article III standing and the availability of liquidated damages.

This, the 28th day of September 2020.

/s/ Loretta C. Biggs
United States District Judge