IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WILLIAM PARKER GAREY, et al., )<br>*on behalf of themselves and others similarly situated*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JAMES S. FARRIN, P.C., et al., )<br>)<br>Defendants. ) | 1:16CV542 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiffs initiated this action alleging that the above-named Defendants violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, by obtaining their names and addresses from automobile accident reports and using that information to advertise legal services. (ECF Nos. 1; 32; 180.) On January 22, 2021, the Court granted summary judgment on all counts in favor of Defendants. (ECF No. 331.) Before the Court is Plaintiff's Motion to Revise Order on Summary Judgment Motions. (ECF No. 333.) For the reasons set forth below, Plaintiffs' motion will be denied.

**I.      BACKGROUND**

The DPPA holds liable certain parties for the misuse of a driver's information if that data has been collected from a "motor vehicle record." 18 U.S.C. § 2724(a). In their

complaint,[1] the six named Plaintiffs alleged that they were each involved in car accidents in 2016. (ECF No. 180 ¶¶ 42–47.) In each accident, either local police officers or North Carolina State Highway Patrol troopers investigated and recorded their findings on a standard DMV-349 form that was then provided to the state's Division of Motor Vehicles ("DMV"). (*Id.*; *see also, e.g.*, ECF No. 206-8 at 2.) To complete the form's driver identification fields, the investigating officers first asked each Plaintiff for his or her driver's license before then (a) copying all of the needed information onto a paper form by hand, (b) entering all of the information manually into an electronic version of the form, or (c) auto-populating the form either by typing the license number into a computer or by scanning a barcode on the back of the license. (*See* ECF No. 180 ¶¶ 50–51.) In each instance, the investigating officers also asked the Plaintiff whether the information on his or her license was accurate. (*Id.* ¶ 52.) When each Plaintiff answered in the affirmative, the officer checked a box to indicate that the address entered onto the form matched the address on the driver's license. (*Id.*)

In the weeks that followed, Plaintiffs received unsolicited marketing materials from various North Carolina attorneys and law firms, including Defendants, who had obtained their names and addresses from their respective DMV-349s. (*See* ECF Nos. 32-1 through 32-32; 180 ¶¶ 54–114.) In some cases, Defendants collected information from Plaintiffs' DMV-349s themselves, and in other cases they purchased accident report data aggregated by a third party. (*See, e.g.*, ECF Nos. 220-1 at 24–25; 220-7 at 15–16.) Plaintiffs did not argue that the DMV-349 reports are themselves "motor vehicle records." (*See* ECF No. 263 at 17–20.) Rather,

---

[1] The complaint referenced throughout this Opinion is the Second Amended and Supplemental Complaint, (ECF No. 180).

they contended that the information included in the report may be traced back to such records and thus fall under the ambit of the DPPA. (*Id.*) Therefore, the central question forming the basis of this lawsuit was whether, as Plaintiffs alleged, Defendants' conduct in gathering personal information from DMV-349s and using it to market legal services is a violation of the DPPA.

## II. LEGAL STANDARD

Under Rule 54(b) of the Federal Rules of Civil Procedure, the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003); *see* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment."). "Said power is committed to the discretion of the district court" and may be exercised as justice requires. *Am. Canoe Ass'n*, 326 F.3d at 515. The Fourth Circuit has held that Rule 54(b) motions "are not subject to the strict standards applicable to motions for reconsideration of a final judgment," under Rule 59(e). *Id.* at 514. Nonetheless, courts in this Circuit have frequently looked to the standards under Rule 59(e) for guidance in considering motions for reconsideration under Rule 54(b).[2] Accordingly, reconsideration under Rule 54(b), like Rule 59(e), "is appropriate on the following grounds: (1) to account for an intervening change in controlling law; (2) to account for newly discovered evidence; or (3) to correct a clear error of law or prevent manifest injustice." *South Carolina v. United States*, 232

---

[2] *See, e.g., South Carolina v. United States*, 232 F. Supp. 3d 785, 792–93 (D.S.C. 2017); *Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC 13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014); *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 1435674, at *3 (N.D.W. Va. Apr. 25, 2012).

3

F. Supp. 3d 785, 793 (D.S.C. 2017). Although Rule 54(b) motions for reconsideration are held to a less stringent standard than motions under Rule 59(e), such motions "should not be used to rehash arguments the court has already considered" or "to raise new arguments or evidence that could have been raised previously." *Id.* at 793.

## III. DISCUSSION

In their motion, Plaintiffs argue that this Court emphasized two points in reaching its decision to grant summary judgment to Defendants which must be reconsidered. (ECF No. 334 at 5.) The first point is

> (1) That Plaintiffs make "no allegations that the accident reports are 'motor vehicle records' under the DPPA nor that the personal information was obtained from a search of a DMV database."

(*Id.* (citing ECF No. 331 at 18).) Plaintiffs candidly acknowledge that they had earlier not contested the statement that accident reports were not "motor vehicle records," but have since "fundamentally altered their position" in light of the recent opinion in *Gaston v. LexisNexis Risk Sols., Inc.*, No. 5:16-cv-00009, 2020 WL 5235340 (W.D.N.C. Sept. 2, 2020), where a North Carolina federal district court found in favor of Plaintiffs under a similar fact pattern. (*Id.* at 8 n.4.) Plaintiffs also contend that, in briefing the instant case, they made the same argument that "swayed the court in *Gaston*" to find that *information* contained in the reports could fall under that definition. (*Id.* at 9.) Yet even assuming arguendo that "*Gaston's* well-reasoned holding" provides a new framework for this analysis, Plaintiffs had several chances to make the straightforward contention that DMV-349s were in fact motor vehicle records and chose not to do so. Given that there is no new evidence, no change in controlling authority, nor

4

clear error, the Court declines to now subsequently alter, amend, or reconsider its Order on such a basis.

The second, and final, statement which Plaintiffs dispute is the Court's finding

> (2) That "Plaintiffs point to no decision—nor has this Court been able to find one—where a defendant was adjudged liable as a matter of law for a DPPA violation after obtaining, disclosing, or using 'personal information' that was not gathered directly from a state DMV."

(ECF No. 334 at 5–6 (citing ECF No. 331 at 18).) Again, Plaintiffs do not dispute the Court's conclusion but rather assert that they "believed the issue of whether the DPPA applied only to defendants who had obtained information directly from a state DMV had already been fully briefed and decided in Plaintiffs' favor by this Court." (*Id.* at 5–6 n.3 (citing ECF No. 93 at 17–18).) Plaintiffs point to an Order denying a motion to dismiss where the Court rejected Defendants' argument that "[t]he DPPA only regulates the disclosure of information held by a state DMV." (*See* ECF No. 93 at 17 (citing ECF No. 61 at 18)). Yet, at the motion to dismiss stage, a Court is simply considering whether a complaint contains "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court was not deciding, for instance, how far DPPA liability extended based on the limited record before it.

It is perhaps additionally useful to examine the context in which the disputed statement appeared in the Court's most recent Order granting summary judgment to Defendants. In concluding that Defendants had not violated the DPPA, the Court found that the theory of "a chain of liability" under the statute that "exists from the time information is entered into a DMV database and continues through the issuance of a driver's license and then to any subsequent obtainment, disclosure or use of information found therein . . . extends the

5

statutory language beyond its explicit construction." (ECF No. 331 at 19.) The Court next observed that—even beyond this statutory interpretation—"the weight of the case law and the underlying legislative goals" support such a finding. (*Id.*) Therefore, rather than relying on the lack of cases to reach such a conclusion, the Court simply observed that there was not sufficient case law before it that would counterbalance the Court's reading of the DPPA and suggest that liability under the statute could be so attenuated.

Plaintiffs nevertheless assert that that there are two cases in which courts have found a DPPA violation when information was not gathered from a state DMV. The first is the aforementioned *Gaston* case in which the court found in favor of Plaintiffs "where information [was] gathered [from] a police department." (ECF No. 334 at 5–6 n.3) The Court agrees that the *Gaston* decision, which had not been decided when Plaintiffs filed their motion for summary judgment, does reach such a conclusion. The second is *Pichler v. UNITE*, 542 F.3d 380 (3d Cir. 2008), "where a labor union was held liable as a matter of law after obtaining personal information from 'a Westlaw database or through private investigators or "information brokers."'" (ECF No. 334 at 5–6 n.3 (citing *Pichler*, 542 F.3d at 384).) However, in *Pichler* the "information brokers" were acting on behalf of the union and "obtained the information by directly applying to the states' motor vehicle bureaus." *Pichler v. UNITE*, 446 F. Supp. 2d 353, 359 (E.D. Pa. 2006). In fact, the district court in that case expressly found that the records for each of the eight named plaintiffs were accessed directly from the Pennsylvania Department of Transportation. *Id.* at 360. Though the court also detailed a series of Westlaw searches that defendants undertook, in finding for plaintiffs it conducted no further analysis as to whether accessing a record through Westlaw would have been a sufficient

6

basis on which to allege a violation of the DPPA. *See generally id.* While these two cases could arguably provide some support for Plaintiffs' arguments, neither is controlling in this instance and they ultimately fail to persuade the Court that its decision—when viewed in the context of all of the other factors it considered—is plainly erroneous.

In sum, the Court finds that there has not been an intervening change in controlling law, no newly discovered evidence, nor clear error of law manifesting injustice. The Court therefore finds that Plaintiffs have failed to establish any basis under Rule 54(b), 59(e), or 60(b) for alteration, amendment, or reconsideration of its previous Order and will therefore deny Plaintiffs' motion.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Revise Order on Summary Judgment Motions, (ECF No. 333), is DENIED.

This, the 24th day of March 2021.

/s/ Loretta C. Biggs
United States District Judge